## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Plaintiff,

v.                                                                Case No: 8:22-cv-2182-CEH-AAS

THE PRINCESS MARTHA, LLC,
TJM PROPERTIES, INC. and TJM
PROPERTY MANAGEMENT, INC.,

      Defendants.

_____

## <u>ORDER</u>

This cause comes before the Court on Defendants TJM Properties, Inc., and
TJM Property Management, Inc.'s (collectively, "TJM") Motion to Dismiss Plaintiff's
Amended Complaint (Doc. 30), and Plaintiff U.S. Equal Employment Opportunity
Commission's ("EEOC") response in opposition (Doc. 34).   In this employment
action, the EEOC alleges that Defendants TJM and the Princess Martha discriminated
against the Charging Party by failing to hire or accommodate her based on her
disability.  The TJM entities move to dismiss the claims against them, arguing that: 1)
the EEOC and the Charging Party failed to exhaust their administrative remedies
against TJM, rather than the Princess Martha; and, in the alternative, 2) the Amended
Complaint fails to adequately allege facts demonstrating an integrated enterprise or
joint employment between TJM and the Princess Martha.

Upon review and consideration, and being fully advised in the premises, the Court will deny the motion to dismiss.

## I.     BACKGROUND[1]

Charging Party Sarah Branyan was offered a job as the Activities Coordinator for the Princess Martha, a retirement community.  Doc. 24 ¶ 87, 89-90.  To finalize the hiring process, she was required to complete a background check and a drug test. *Id.* ¶ 90.  Branyan disclosed that she took prescription medications to treat Post-Traumatic Stress Disorder ("PTSD") that would cause her to fail the drug test. *Id.* ¶ 92.  Nonetheless, she submitted a urine sample to satisfy the drug screening protocol on August 19, 2021. *Id.* ¶ 99.  On August 26, 2021, the Princess Martha rescinded its offer of employment. *Id.* ¶ 110.

Branyan filed a Charge of Discrimination with the EEOC, alleging that the Princess Martha violated the Americans with Disabilities Act of 1990 (the "ADA").

---

[1] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court derives the statement of facts from the factual allegations of the pleadings, which the Court must accept as true in ruling on the motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Court generally cannot look outside the pleadings. *See* Fed. R. Civ. P. 12(d).  However, the Court may consider an extrinsic document that is (1) central to the plaintiff's claim, and (2) of unchallenged authenticity. *SFM Holdings, Ltd. v. Banc of Am. Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citations omitted).  Materials from the EEOC's investigation, such as the charge of discrimination and the determination letter, often fall under this exception. *See, e.g.*, *McClure v. Oasis Outsourcing II, Inc.*, 674 F. App'x 873, 875-76 (11th Cir. 2016) (district court did not err in considering EEOC materials with respect to motion to dismiss); *Hewerdine v. Eli Lilly and Co.*, No. 3:20-cv-659, 2021 WL 707185, *4 (considering EEOC materials on motion to dismiss because their authenticity was unchallenged and they were central to plaintiff's claim).  Here, the parties agree that the Court may consider the EEOC materials attached to the motion to dismiss. Doc. 30 at 5; Doc. 34 at 2 n.2.  The authenticity of the EEOC materials is unchallenged and they are central to the EEOC's claims.  Accordingly, it will consider the exhibits attached to TJM's motion to dismiss in addition to the pleadings themselves.

*Id.* ¶ 13.  The EEOC sent the Princess Martha notice of the charge on November 23, 2021. *Id.* ¶ 14.  During its investigation, the EEOC determined that the Princess Martha had a joint employer relationship with TJM Properties, Inc. ("TJM Properties"). *Id.* ¶15.  It sent notice of that finding to TJM Properties on May 26, 2022. *Id.* ¶ 16.  On July 6, 2022, the EEOC issued a Letter of Determination to TJM Properties and the Princess Martha, announcing that it had found reasonable cause to believe they discriminated against Branyan by not hiring her based on her disability and by failing to provide a reasonable accommodation in violation of the Americans with Disabilities Act ("ADA").  In the Letter of Determination, the EEOC attempted to engage in the conciliation process with TJM Properties and the Princess Martha. *Id.* ¶ 23.  However, the EEOC was unable to obtain an acceptable conciliation agreement, and thus issued a Notice of Failure of Conciliation to the parties. *Id.* ¶ 25.

The EEOC filed the instant action against TJM Properties and the Princess Martha on September 21, 2022, alleging that they violated the ADA by failing or refusing to hire Branyan based on her disability, and by failing to accommodate her disability. Doc. 1.  The EEOC subsequently amended the complaint by adding TJM Property Management to the suit. Doc. 24.  The EEOC alleges that TJM Property Management received the Charge and Letter of Determination along with TJM Properties, Inc., and the Princess Martha, because of its interrelated relationship as a single or integrated enterprise and/or joint employer with them. *Id.* ¶ 18, 22.

The Amended Complaint alleges that TJM and the Princess Martha have an interrelated relationship for several reasons.  First, all three entities share a mailing

address, a registered agent/owner, and a human resources officer. *Id.* ¶¶ 29, 31, 33, 40-42, 68, 58-61.   TJM Properties is a real estate acquisition and management firm that owns and manages the Princess Martha, while TJM Property Management is a commercial real estate management corporation that operates and manages the Princess Martha. *Id.* ¶¶ 30, 32, 39, 42, 65-66.   The members of the limited liability company that owns the Princess Martha are interrelated with the TJM entities in that they share executive positions. *Id.* ¶¶ 44-53.   TJM employees directly oversee the Princess Martha's operations; Princess Martha employees receive benefits and employment policy training from TJM; and some of the Princess Martha's hiring procedures are operated through TJM. *Id.* ¶¶ 51-57, 62-64., 76-77.   Further, a management agreement between the Princess Martha and TJM Property Management requires the latter entity to assist the Princess Martha with employment matters such as pay scales, personnel policies, and ADA compliance, and with "coordinating all legal matters and proceedings[.]" *Id.* ¶¶ 69-75.   The Amended Complaint also alleges that TJM Property Management sent Branyan an email thanking her for applying to work for the Princess Martha and inviting her to register for the TJM payroll system. *Id.* ¶ 88.   In addition, a shared human resources employee of the Princess Martha and TJM Properties contacted Branyan to discuss the drug test policy and was identified as a point of contact when her offer was rescinded. *Id.* ¶¶ 98, 102-103.

TJM Properties and TJM Property Management now move to dismiss on two grounds. Doc 30.   First, they argue that Branyan and the EEOC failed to exhaust their administrative remedies as to TJM because the Charge of Discrimination only named

the Princess Martha, and the EEOC failed to engage in other exhaustion requirements with TJM, including adequately putting them on notice or giving them adequate opportunity to conciliate. *Id.* Second, the TJM entities argue that the Amended Complaint fails to allege sufficient facts demonstrating that a single/integrated enterprise or joint employer relationship exists between TJM and the Princess Martha. *Id.* They contend that the EEOC only alleges bare legal conclusions that do not establish a factual basis for those theories of liability, requiring TJM's dismissal from the suit. *Id.*

Responding in opposition, the EEOC argues that Branyan and the EEOC did exhaust their administrative remedies. Doc. 34. Although Branyan did not name TJM in her Charge of Discrimination, the TJM entities were not prejudiced because they received adequate notice of the charge and the opportunity to conciliate due to their interrelation with the Princess Martha. *Id.* Additionally, the EEOC argues that it has more than plausibly alleged that all three defendants are an integrated enterprise or joint employers. *Id.*

## II.  <u>LEGAL STANDARD</u>

An argument that a plaintiff has failed to exhaust administrative remedies may be raised via Federal Rule of Civil Procedure 12(b)(6). *See*, *e.g.*, *Carter v. Secretary of Navy*, 492 F. App'x 50, 53 (11th Cir. 2013). However, because the exhaustion of administrative remedies is a prerequisite to the Court's jurisdiction, the failure to exhaust is most properly challenged in a motion pursuant to Rule 12(b)(1) for lack of

subject-matter jurisdiction. *Peppers v. Cobb County, Ga.*, 835 F.3d 1289 (11th Cir. 2016); *see Bakerville v. Secretary of Dep't of Veterans Affairs*, 377 F.Supp.3d 1331, 1334 n.1 (M.D. Fla. 2019) (collecting cases on jurisdictional challenges to exhaustion requirement). The Court is obligated to examine its own jurisdiction *sua sponte* whenever it may be lacking. *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004).  Under Rule 12(b)(1), a party may raise, by motion, the defense of lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), quoting Fed. R. Civ. P. 8(a)(2).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient.  *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, mere naked assertions are not sufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

III.    **DISCUSSION**

**A. The EEOC Exhausted Its Administrative Remedies**

TJM first contend that the EEOC failed to exhaust its administrative remedies as to the TJM entities because they were not named in the Charge of Discrimination. Doc. 30 at 7.  Although Branyan could have ascertained TJM's identities at the time she filed the charge, TJM Properties did not receive notice until 183 days afterward, depriving it of an adequate opportunity to engage in conciliation, while TJM Property Management received no actual notice of the charge until it was added to the Amended Complaint. *Id.* at 9.  Moreover, the EEOC did not notify TJM that it would be pursuing a joint employer or single/integrated enterprise theory or otherwise identify the reasonable cause for its belief that they violated the ADA. *Id.* at 7-8, 11. The lack of notice prejudiced TJM because they did not have the opportunity to adequately respond to the Charge or the interrelated employer allegations, nor to adequately participate in conciliation efforts. *Id.* at 10-12.  Finally, the failure to amend the charge to assert claims against TJM based upon joint employer or single/integrated enterprise theories is fatal because the theories are outside the scope of the charge and were required to be administratively reviewed before they can serve as the basis for a judicial finding of discrimination. *Id.* at 12-13.

In response, the EEOC asserts that it provided TJM with notice and an opportunity to participate in conciliation. Doc. 34 at 5.  It argues there is a similarity in interest between all three defendants, which are owned and directed by a single individual and have joint duties and overlapping employees. *Id.* at 6-7.  The EEOC

disputes TJM's contention that Branyan, an unrepresented layperson, could have ascertained TJM's identities when the Princess Martha was the only entity for whom she applied to work. *Id.* at 7-8.  Further, TJM had adequate notice of the charge and the ability to conciliate because TJM Properties participated in the conciliation process and was explicitly notified that it was identified as a joint employer to the Princess Martha. *Id.* at 8.  To the extent TJM Properties denies it had the opportunity to participate in conciliation, this argument constitutes a denial of the EEOC's well-pled facts, which must be considered as true at this stage. *Id.* at 12-13.  With respect to TJM Property Management, it received notice due to its interrelated nature with the other defendants, as well as the fact that an agreement between the defendants required TJM Property Management to assist in coordinating legal matters relating to the Princess Martha. *Id.*  Moreover, it was not prejudiced because its interests were represented in the conciliation process based on its relationship to the other defendants. *Id.* at 11.  The fact that all defendants have the same counsel demonstrates that their interests are not divergent or conflicting. *Id.*  Lastly, the EEOC was not required to analyze the grounds for joint employer and integrated enterprise liability in the Letter of Determination, nor to amend the Charge to raise identical allegations against jointly liable entities. *Id.* at 13-14.

Before suing under the ADA, plaintiffs are required to exhaust their administrative remedies by filing a charge of discrimination with the EEOC. *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018).  The purpose of the exhaustion requirement is to allow the EEOC to "have the first opportunity to investigate the

alleged discriminatory practices[.]" *Gregory v. Ga. Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004) (citations and quotations omitted). [2]   Administrative exhaustion is a jurisdictional prerequisite to a discrimination claim. *Peppers v. Cobb Cnty., Ga.*, 835 F.3d 1289, 1296-97 (11th Cir. 2016) (quotation omitted).   Nonetheless, the Eleventh Circuit is "extremely reluctant to allow procedural technicalities to bar claims brought under discrimination statutes." *Batson v. Salvation Army*, 897 F.3d 1320, 1327, quoting *Gregory*, 355 F.3d at 1280 (modification omitted).   As such, "the scope of an EEOC complaint should not be strictly interpreted." *Id.*

In general, only a party named in an EEOC charge can be sued in a subsequent lawsuit. *Id.* at 1296, citing *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994).   However, courts "liberally construe" the naming requirement. *Peppers*, 835 F.3d at 1296.   To determine whether a party not named in the EEOC charge may be sued, courts consider several non-exclusive factors:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process;

---

[2] Although *Gregory* involved a suit brought under Title VII of the Civil Rights Act of 1964, the Eleventh Circuit has analyzed the EEOC exhaustion requirements identically in discrimination cases involving Title VII and the ADA. *See, e.g., Batson*, 897 F.3d at 1327-28 (citing to and applying the same analysis as Title VII cases for an ADA claim); *see also Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999) ("It is settled law that, under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII"); *McClure v. Oasis Outsourcing II, Inc.*, 674 F. App'x 873, 875 (11th Cir. 2016) (recognizing that procedural requirements of ADA are identical to those of Title VII, including the duty to exhaust administrative remedies).

and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Virgo*, 30 F.3d at 1359.

Here, the majority of the *Virgo* factors weigh in favor of the conclusion that both TJM entities may be sued.  Each factor will be discussed in turn.

      1.   *Similarity of interest between the named party and unnamed party.*

TJM do not argue that similarity of interest, the first *Virgo* factor, is lacking between them and the Princess Martha.  The Court agrees that it is not.

In evaluating this factor, courts have considered whether companies have common management, centralized control of labor relations, and interrelation of operations. *Scelta v. Delicatessen Support Servs., Inc.,* 57 F. Supp. 2d 1327, 1353 (M.D. Fla. 1999).  Likewise, commonality in ownership, operations, control, or finances between the defendants may demonstrate similarity of interest. *See Tuck v. Off Shore Inland Marine & Oilfield Co.*, No. CIV.A. 12-0379, 2013 WL 81135, *2 (S.D. Ala. Jan. 4, 2013) (where those factors lacked commonality, a temporary contractual interaction between two defendants was insufficient).  Similarity of interest has also been found where defendants share an address, a registered agent, and executives. *See Hull v. Paramount Printing, LLC*, No. 421CV00190HLMWEJ, 2021 WL 9624561, *4 (N.D. Ga. Dec. 20, 2021); *Pasley v. Relogio, LLC,* No. 4:20-CV-124-HLM-WEJ, 2020 WL 10459816, *2 (N.D. Ga. Dec. 14, 2020), *report and recommendation adopted by* 2020 WL 10459815 (Dec. 29, 2020).  Representation by the same counsel is another factor that shows similarity of interest. *Hull*, 2021 WL 9624561 at *5.

Here, the Amended Complaint alleges that the "defendants' operations are interrelated," and all defendants "share common ownership and management." Doc. 24 ¶¶ 34-37.  Terence McCarty is the registered owner and agent for all three defendants. *Id.* ¶ 34.  Moreover, TJM's operating directors are all managing members of the Princess Martha. *Id.* ¶¶ 46, 48.  The defendants also share a mailing address and executives, and are represented by the same counsel. *Id.* ¶¶ 29, 31, 33, 40-64.  The similarity of interests factor supports the EEOC.

> 2. *Whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed.*

The second *Virgo* factor examines whether the Charging Party could have ascertained the identity of the unnamed defendant at the time she filed the EEOC charge.  This factor weighs against a plaintiff who had actual knowledge of the unnamed party's identity. *See  Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 457 (11th Cir. 2010) (plaintiff knew the city's identity and its role in the alleged discrimination but failed to name it in his EEOC charge); *Tuck*, 2013 WL 81135 at *3 (plaintiffs knew who the party was and what its role was in their employment).  The *Tuck* court emphasized that "[t]his is not a case in which the naming requirement should be relaxed because plaintiffs lacked information as to the identity of the proper respondent when they appeared before the EEOC." *Id.*  In contrast, *Franks v. Whitfield Cnty., Ga.*, No. 4:19-cv-96, 2019 WL 12384806, *4 (N.D. Ga. Sept. 10, 2019), was such a case, because the plaintiff had no reason to believe the sheriff was her employer, rather than the county, where the county was the entity that paid her, provided her

with benefits, and handled the administrative aspects of her employment.  Believing that the county was her employer was therefore a reasonable mistake to make, "as any layperson unfamiliar with Title VII's technical requirements might do." *Id.*; *see also Miller v. Stickbay*, No. 8:15-cv-2040, 2016 WL 3344838, *3 (M.D. Fla. June 15, 2016) (the similarity in names between defendants would make it difficult for plaintiff to legally identify the correct party without counsel).  The plaintiff bears the burden of proving this factor, however.  *See Hull*, 2021 WL 96224561 at *4 (the second factor weighed in defendant's favor where neither complaint nor response in opposition to motion to dismiss addressed why plaintiff did not name defendant in the EEOC charge or amend the charge); *cf. Pasley*, 2020 WL 10459816 at *5 (plaintiff met burden of proving second factor via a declaration stating that he did not know the corporate structure and explaining why).

Here, there is no indication that Branyan knew or could have ascertained the identity of TJM Properties before filing the EEOC charge.  But she alleges that she received an email from TJM Property Management, Inc., in which it thanked her for her interest in the Princess Martha and invited her to create an account with its payroll website. Doc. 24 ¶ 88.  Otherwise, her interactions during the application process were limited to the Princess Martha.

The email from TJM Property Management could have put Branyan on notice that it was a related company to the Princess Martha, prompting further investigation into its possible liability for the alleged discrimination.  Branyan has not offered any evidence or explanation to refute this theory or carry her burden. *See Hull*, 2021 WL

96224561 at *4; *cf. Pasley*, 2020 WL 10459816 at *5.   On the other hand, to an unrepresented layperson, it might not have been clear from the email that TJM Property Management was a related company rather than a human resources contractor, particularly as all of Branyan's other interactions were with the Princess Martha alone. *See Franks*, 2019 WL 12384806 at *4; *Miller*, 2016 WL 3344838 at *3. In all, this factor does not weigh in favor of either party.

### 3. *Whether the unnamed party received adequate notice of the charges*

Next, courts consider whether the unnamed party received adequate notice of the charges.  In *Virgo*, the court found that an unnamed party "should be held to have received notice" when it is a "closely related entity" or "functionally identical" to a named party. 30 F.3d at 1359.  The decision in *Hull*, 2021 WL 9624561 at *5, illustrates this concept.  The court found that notice to an individual who served as both entities' CEO and registered agent was "highly likely" to provide actual notice of the EEOC charge to the unnamed entity as well as the named one. *Id.*; *see also Perez v. Little Italy Pizzeria*, No. 2:18-cv-192, 2019 WL 13413434, *3 (N.D. Ga. April 25, 2019) (allegations that unnamed restaurant's registered agent operated the named restaurant at the same registered address, and that the two restaurants were part of a family of businesses that shared products, supplies, employees, and a common marketing logo, were enough to show that the unnamed restaurant received notice of the EEOC charge); *McCulley v. Allstates Tech. Svcs.*, No. Civ.A. 04-0115, 2005 WL 1475314, *24 (S.D. Ala. June 21, 2005) (unnamed party could not credibly argue it lacked notice, "given that the corporate actors handling the charge on [named party's] behalf were

also affiliated with [unnamed party]"); *DiGiro v. Pall Corp.*, 993 F. Supp. 1471, 1474 (M.D. Fla. 1998) ("It is well-established that an administrative charge against one defendant may provide sufficient notice to another defendant, when the two are closely related entities.") (quotations omitted).

Here, TJM concedes that TJM Properties received actual notice of the charge through the EEOC's May 2022 letter, which was sent before the investigation was complete and which announced that the EEOC considered TJM Properties and the Princess Martha to be joint employers. Doc. 30-2.  Although the TJM entities contend that the timing was insufficient to provide "adequate notice," they cite no caselaw to support this argument.  Indeed, the EEOC alleges that TJM Properties participated in the conciliation process after receiving that letter. Doc. 24 ¶¶ 23-25.

With respect to TJM Property Management, the EEOC has sufficiently alleged that the TJM entities are closely related such that the notice TJM Properties received should be applied to TJM Property Management. *See Virgo*, 30 F.3d at 1359.  As in *Hull* and *Perez*, the May 2022 letter was sent to the address and principal place of business of, and addressed to the registered agent of, both TJM entities.  These allegations are adequate to demonstrate that TJM Property Management received notice of the EEOC charge along with TJM Properties.

### 4. *Opportunity to conciliate and actual prejudice to the unnamed party*

The fourth and fifth *Virgo* factors involve similar considerations to the third.  As noted, the EEOC alleges that TJM Properties participated in conciliation, just as the July 2022 Letter of Determination invited it to do. Doc. 30-3.  TJM argues that TJM

Properties "did not have an adequate opportunity to participate in the reconciliation process because the EEOC asserted new allegations of a joint employer relationship, failed to assert allegations of a single/integrated enterprise, and failed to make any findings regarding TJM Properties in its reasonable cause decision." Doc. 30 at 9.  But the opportunity to conciliate came several months after the EEOC alerted TJM Properties that it considered TJM Properties to be a joint employer with the Princess Martha.  It is unclear what role knowledge of a single/integrated enterprise theory instead of a joint employer theory would have played in TJM's conciliation efforts, such that not knowing about this theory constituted a deprivation of the opportunity to conciliate.  And, to the extent TJM Properties had questions that the Letter of Determination did not answer, it had the opportunity to inquire during the conciliation process.   TJM Properties undoubtedly had the opportunity to participate in conciliation.

Further, under the circumstances of this case, it is appropriate to impute TJM Properties' opportunity to conciliate to that of TJM Property Management.  In *Hull*, the court found that "[t]he association between defendants via their control by [the CEO and registered agent] and their sharing of a Human Resource Department and counsel creates a unique situation where one entity's participation in the EEOC conciliation process would represent the interests of the other entity." 2021 WL 9624561 at *5; *see also Pasley*, 2020 WL 10459816 at *5 (same).  Here, the close association and common control between the two TJM entities leads to the same conclusion.

15

With respect to the final *Virgo* factor, courts have generally found that an unnamed party that had notice and an opportunity to conciliate has not been prejudiced by its exclusion from the EEOC proceedings. *See*, *e.g.*, *Hull*, 2021 WL 9624561 at *5; *Pasley*, 2020 WL 10459816 at *5; *Jones v. Nippon Cargo Airlines Co., Ltd.*, No. 1:17-cv-1589, 2018 WL 1077355, *7 (N.D. Ga. Jan. 12, 2018); *Scelta*, 57 F.Supp.2d at 1355; *cf. Lewis*, 402 F. App'x at 457 (unnamed party was prejudiced by lack of notice or opportunity to conciliate).

The TJM entities argue that "it is only reasonable to assume" they were prejudiced by the alleged lack of sufficient notice, because they were precluded from advancing any defenses. Doc. 30 at 10.  But the purpose of the naming requirement is to "notify the charged party of the allegations and allow the party an opportunity to participate in conciliation and voluntarily comply with the requirements of [the relevant statute]." *Virgo*, 30 F.3d at 1358.  If these purposes are fulfilled, an unnamed party may be subject to jurisdiction in a federal suit. *Id.*  The purposes identified by the *Virgo* court do not encompass TJM's argument that they must receive an opportunity to defend themselves at the EEOC stage, nor their argument that they should be able to do so under every theory that may be raised in an eventual suit.  Indeed, TJM's position is arguably at odds with the identified goals of conciliation and voluntary compliance, which are not about challenging the charge but rectifying the discrimination.  The case on which the TJM entities rely, *Waltz v. Dunning*, No. 2:13-cv-517, 2014 WL 7409725, *5-6 (N.D. Ala. Dec. 31, 2014), is inapposite.  In *Waltz*, the court rejected the plaintiff's attempt to sue a second company that had little

connection to the named party except that its former CEO had become the named party's CEO. *Id.* at *5.  There was no legal similarity of interest between them, and no indication that any officers or directors of the second company were aware of the plaintiff's EEOC charge or had any opportunity to participate. *Id.* at *5-6.  The court also pointed out that the plaintiff was well aware of the second company's identity and role, and that the plaintiff's allegations about the second company concerned conduct that was "well outside the limitations period." *Id.*  Here, in contrast, the majority of the *Virgo* factors compel a conclusion that the statutory purposes were fulfilled. Therefore, TJM's motion to dismiss on exhaustion grounds is due to be denied.

### B. The Amended Complaint Adequately Alleges an Integrated Enterprise

The TJM entities next assert that the Amended Complaint fails to allege sufficient facts to support a single/integrated enterprise. Doc. 30 at 16-17.  Specifically, it does not plausibly allege facts that demonstrate centralized control of labor relations, common management, common ownership, or financial control. *Id.*  The Amended Complaint does not allege the ownership interests of the TJM entities, which precludes it from demonstrating common ownership or financial control. *Id.* at 16 n.6.  Further, the management agreement between TJM Property Management and the Princess Martha does not provide for centralized control of labor relations or common management. *Id.* at 16.

The EEOC responds that the Amended Complaint outlines a plausible basis for holding TJM liable under an integrated enterprise theory. Doc. 34 at 15-18.  It alleges that all three business are intertwined, such that they are primarily owned and directed

by a single individual and share employment policies and employees, including human resources. *Id.* at 16.  The TJM entities manage and supervise the operations of the Princess Martha.  TJM Property Management is required to assist the Princess Martha with labor relations and ADA compliance, and facilitates the Princess Martha's hiring procedures. *Id.* at 16-17.  In addition, TJM Properties directly supervises the Princess Martha's executive director and reviews the Princess Martha's employment policies— one of which is being challenged in the instant lawsuit. *Id.* at 17-18.

In determining whether two corporate entities should be consolidated and counted as a single employer, the Eleventh Circuit applies the National Labor Relations Board ("NLRB") test. *See Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999) (citations omitted).  This test sets out four criteria to determine whether the entities are "highly integrated with respect to ownership and operations." *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987) (citation omitted).  The criteria are: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Id.*  No single factor is controlling, and not every factor must be present to find an integrated enterprise. *Lyes*, 166 F.3d at 1341 n.5.

Contrary to TJM's arguments, the Amended Complaint contains sufficient factual allegations which, taken as true, plausibly allege that both TJM entities and the Princess Martha are highly integrated with respect to their ownership and operations.

### 1. Interrelation of operations

Courts have found that entities' operations are interrelated,

> [W]here the evidence shows that there are shared management services, such as check writing and contract negotiations, shared payroll and insurance programs, the preparation of mutual policy manuals, and the use of employees on the payroll of one entity for the performance of work benefitting another nominally separate entity.

*Landon v. Agatha Harden, Inc.*, 6 F. Supp. 2d 1333, 1339 (M.D. Ala. 1998) (citations omitted); *see Player v. Nations Biologics, Inc.*, 993 F. Supp. 878, 880 (M.D. Ala. 1997) (finding interrelated operations where parent company paid bills, invoiced the inventory, handled the payroll, and negotiated contracts); *Siotkas v. Top Jet, LLC*, No. 19-61051-CIV, 2020 WL 13613779, *1-2 (S.D. Fla. Nov. 7, 2020) (same, where one entity served management and human resources' needs of another, entities shared an office, employees making employment decisions for both entities were the same, and general counsel for both entities terminated plaintiffs at the direction of common senior officers).

The Amended Complaint alleges that TJM Properties and the Princess Martha share a human resources director, employed by TJM Properties, who would review and revise employee handbooks and policies and conduct trainings on the policies for the Princess Martha and TJM's other regional facilities. Doc. 24 ¶¶ 58-63.  Princess Martha employees allegedly receive benefits through TJM Properties. *Id.* ¶ 64.  With respect to TJM Property Management, its management agreement with the Princess Martha requires it to review and assist the Princess Martha with employment and payroll policies, and manage its budget, information systems, supplies, and insurance.

TJM Property Management also issues job postings for the Princess Martha and operates at least some of its hiring procedures. *Id.* ¶¶ 76-77, 88.   TJM Property Management sent an email to Branyan after she applied for the Princess Martha position asking her to create an account with TJM Property Management's payroll website. *Id.* ¶ 88.   Finally, all three entities share a mailing address, and the other managing members of the Princess Martha are active in the management of TJM. *Id.* ¶¶ 29, 31, 33, 34, 45-46, 47, 52.   These allegations are more than sufficient to plausibly allege that both TJM entities' operations are interrelated with the Princess Martha.

>   *2. Centralized control of labor relations*

Some courts have noted that this factor is "the most critical" of the four NLRB factors. *See Fike v. Gold Kist, Inc.*, 514 F.Supp. 722, 727 (N.D.Ala.1981) *aff'd*, 664 F.2d 295 (11th Cir.1981).   Centralized control of labor relations calls for "actual and active control of day-to-day labor practices," particularly in the area of personnel. *Id.* In *Player*, the parent company's design of a universal personnel handbook for the use of its related entities was enough to demonstrate this factor. 993 F.Supp. at 883; *see also Siotkas*, 2020 WL 13613779 at *2 (same, where entities used centralized human resources functions and personnel).

As discussed in the previous section, the Princess Martha's human resources director is an employee of TJM Properties who is responsible for reviewing employee handbooks and training on the Princess Martha's personnel policies.   The same individual was identified as Branyan's point of contact with respect to the drug testing

policy at issue in this action. Doc. 24 ¶¶ 98, 102-103. TJM Property Management is responsible for managing the Princess Martha's hiring procedures and onboarding, it contacted Branyan as part of her application process, and it is required to assist with the Princess Martha's employment policies. These allegations sufficiently demonstrate that both TJM entities had actual and active control of the Princess Martha's personnel policies.

### 3. *Common management and ownership or financial control*

The common ownership factor is met "[w]hen an individual controls all companies and serves as an officer/director to each company[.]" *Stockett v. Tolin*, 791 F. Supp. 1536, 1551 (S.D. Fla. 1992). Common management by one individual or group over nominally distinct entities—such as common directors and officers—satisfies the remaining NLRB factor. *See Landon v. Agatha Harden, Inc.*, 6 F.Supp.2d 1333, 1340-41 (M.D. Ala. 1998) (conflicting evidence regarding whether common owners also managed the separate entities on a daily basis created a question of fact for summary judgment purposes); *Fike*, 514 F.Supp. at 727-28 (neither factor supported single enterprise theory where entities had separate directors and officers and there was no evidence of common ownership or actual financial control by one entity over the other); *cf. Player*, 993 F.Supp. at 882-83 (both factors supported single enterprise theory where one individual served as the owner, president, and sole officer of all entities, one company was

created in order to provide management for the others, and all profits were pooled into a single bank account).

Here, all three entities allegedly share a common owner, McCarthy. Doc. 24 ¶¶ 40-44, 68. McCarthy is also the director and president of TJM Property Management, and the managing member of the Princess Martha. *Id.* ¶ 44, 67. The three other members of the Princess Martha are executives at TJM Properties. *Id.* ¶¶ 46, 48. One of them, allegedly McCarthy's daughter, serves as TJM Properties' regional director of operations; her duties include oversight and management of the day-to-day operations of all TJM senior living facilities, including the Princess Martha. *Id.* ¶¶ 48-53. In addition, the Princess Martha's executive director was directly supervised during the relevant time frame by TJM Property's former regional director of operations. *Id.* ¶¶ 54-57. Finally, TJM Property Management is responsible for managing many of the Princess Martha's regular operations and its budget. *Id.* ¶¶ 65, 69-75.

The EEOC does not explicitly allege that either TJM entity maintains financial control over the Princess Martha or that their finances are pooled, although the management agreement requires TJM Property Management to supervise the Princess Martha's financial reporting, accounting, and budgets. At this pre-discovery stage, however, the factual allegations plausibly suggest the possibility of common financial control between the entities. Moreover, the EEOC has sufficiently and plausibly alleged that the entities have common management and ownership. Because the

22

Amended Complaint contains enough specific factual allegations to demonstrate all four NLRB factors, it adequately pleads the existence of a single or integrated enterprise with respect to both TJM entities.

## C.  The Amended Complaint Plausibly Alleges Joint Employer Liability

Finally, the TJM entities argue that the Amended Complaint fails to adequately allege, in a non-conclusory fashion, that either TJM entity was in a joint employer relationship with the Princess Martha. Doc. 30 at 13-15.  There are no facts to suggest that TJM Property Management had control over employees of the Princess Martha, and none to suggest that TJM Properties exercised control over Branyan's application process. *Id.* at 14.  Nor does it allege that either entity participated in the decision to rescind her offer, or that the Princess Martha's owners have common ownership interests in either TJM entity. *Id.* at 15.

The EEOC responds that its allegations are sufficiently to plausibly allege joint employer liability for many of the same reasons as the single or integrated enterprise theory. Doc. 34 at 19-20.  It further points to the management agreement that established a contractual obligation for TJM Property Management to manage the Princess Martha's employment practices, and TJM Properties' human resources executive's role in Branyan's drug testing process. *Id.*

A joint employer relationship exists "where two or more employers exert significant control over the same employees" such that, even though they are separate entities, "it can be shown that they share or co-determine those matters governing essential terms and conditions of employment." *Zillyette v. Capital One Financial Corp.*,

1 F.Supp.2d 1435, 1444 (M.D. Fla. 1998), quoting *NLRB v. Browning-Ferris Industries of Pa., Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982); *see also Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1360 (11th Cir. 1994) (citing *NLRB* joint employer standard in Title VII context).  In the Title VII context, courts have also assessed "the degree of control an entity has over the adverse employment decision on which the Title VII suit is based." *Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998). The analysis considers the totality of the circumstances and the totality of the relationship. *Lamar v. SDH Svcs. East, LLC*, No. 5:19-cv-123, 2019 WL 13301622, *3 (M.D. Ga. July 25, 2019) (FMLA and ADA context).[3]

As the EEOC correctly notes, the fact-intensive nature of the joint employer theory makes it "ill-suited for consideration on a motion to dismiss." Doc. 34 at 19, quoting *Aguilar*, 2014 WL 675663 at *4 (collecting cases in FLSA context).  At this stage, the complaint need only establish sufficient factual foundation to plausibly allege a joint employment relationship. *Id.*; *Key v. Hyundai Motor Mfg., Ala., LLC*, No. 2:19-cv-767, 2021 WL 3909663, *8 (M.D. Ala. Aug. 31, 2021) (collecting cases in Title VII context); *cf. Alvarez v. Bechtel Corp.*, No. 4:21-cv-87, 2022 WL 660177, *6 (S.D. Ga.

---

[3] TJM cites a list of factors the Eleventh Circuit identified to determine whether a joint employer relationship exists in the context of the Fair Labor Standards Act. *See* Doc. 30 at 13-14, citing *Aguilar v. United Floor Crew, Inc.*, No. 14-Civ-61605, 2014 WL 675663, *4 (S.D. Fla. Dec. 1, 2014), citing *Antenor v. D&S Farms*, 88 F.3d 925, 932 (11th Cir. 1996).  It is not clear that courts have applied these factors in the ADA context, and TJM does not provide any such authority.  In any event, the factors call for consideration of many of the same factual questions that the Court has already analyzed with respect to the single or integrated enterprise theory.

March 4, 2022) (granting motion to dismiss in Title VII case where bare allegation that co-defendant was in a "joint venture" with the other defendant was not enough to create an inference that the two were joint employers).

The Amended Complaint contains enough factual foundation to plausibly allege that TJM was in a joint-employer relationship with the Princess Martha. The Court disagrees with TJM's characterization that the Amended Complaint's allegations are conclusory. As it does for the single or integrated enterprise theory, the Amended Complaint contains specific, detailed factual allegations to support its alternative theory that the TJM entities exert sufficient control over the Princess Martha's employment policies that they share or co-determine the terms and conditions of employment. As discussed in the previous section, the EEOC alleges that TJM Properties employs the Princess Martha's human resources director, supervises its executive director, and reviews and revises its employee handbooks and policies. It further alleges that a management agreement between TJM Property Management and the Princess Martha requires TJM Property Management to ensure that the Princess Martha complies with applicable laws, including the ADA, and that TJM is involved with the hiring of new employees. With respect to the adverse employment decision on which this suit is based, a TJM Properties employee was identified as the individual responsible for the decision to rescind Branyan's offer, and she also spoke to Branyan about the company drug test policy before Branyan was tested. And TJM Property Management contacted Branyan about her application with the Princess Martha, implying its involvement in her hiring process as well. In

all, these allegations are enough to plausibly allege that both TJM entities have a joint employer relationship with the Princess Martha for the purpose of surviving a motion to dismiss.  TJM's motion to dismiss is therefore due to be denied on all grounds.

Accordingly, it is **ORDERED**:

1.  Defendants TJM Properties, Inc., and TJM Property Management, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (Doc. 30) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on December 11, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties