## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Plaintiff,

v.                                                    Case No: 8:22-cv-2182-CEH-TGW

THE PRINCESS MARTHA, LLC,
TJM PROPERTIES, INC. and TJM
PROPERTY MANAGEMENT, INC.,

      Defendants.

_____

### <u>ORDER</u>

This matter is before the Court on several post-trial motions.  In this disability discrimination action, Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC"), alleged that Defendants, The Princess Martha, LLC, TJM Properties, Inc., and TJM Property Management, Inc., failed to accommodate Charging Party Sarah Branyan during her application for employment with the Princess Martha.  A jury trial resulted in a verdict in favor of Plaintiff.

Defendants now renew their motion for judgment as a matter of law (Doc. 210), and move for a new trial (Doc. 207) and remittitur (Doc. 209). Plaintiffs have responded to all three motions (Docs. 229, 230, 228).  Plaintiffs also move to amend the judgment to provide for injunctive relief (Doc. 211), which Defendants oppose (Doc. 222).

Upon review and full consideration, and being fully advised in the premises, the Court will deny the motions for judgment as a matter of law and a new trial, and grant-in-part the motions for remittitur and injunctive relief.

## I.   BACKGROUND

### A. Factual Background and Procedural History[1]

The Princess Martha is a senior living facility in St. Petersburg, Florida.  TJM Properties, Inc., is a real estate acquisition and management firm that oversees multiple senior living facilities, including the Princess Martha.   TJM Property Management, Inc., is the management company that manages TJM Properties' facilities, including the Princess Martha.

Sarah Branyan applied for a position at the Princess Martha in August 2021. She was called in for an interview with Brittany Knight on August 18, 2021.  Branyan passed the criminal background check and provided a urine sample for the required drug screening the following day.  Branyan had an active diagnosis of post-traumatic stress disorder ("PTSD"), for which she took prescription medication.  On August 26, she was notified that she would not be hired.

Branyan filed a charge of discrimination with the EEOC in which she alleged that Defendants committed disability discrimination in violation of the Americans with Disabilities Act ("ADA").  The EEOC filed suit on her behalf.  After a five-day trial, the jury found all three Defendants liable for failing to provide Branyan a

---

[1] These facts are taken from the case docket and the parties' stipulations. *See* Docs. 95, 140.

reasonable accommodation.  The jury awarded Branyan $5,083 in backpay, $50,000 in damages for emotional suffering, and $350,000 in punitive damages.

### B. <u>Trial Evidence</u>

### 1. **Branyan's Trial Testimony**

Branyan testified that she explained to Knight during the job interview that she was a veteran with PTSD and that she takes "psych meds." Doc. 213 at 10, 14-15, 25-26. The prescription medications that Branyan takes for her PTSD would cause her to fail a drug test. *Id.* at 41.  As a result, at the interview she tried to hand Knight a list of her prescriptions, but Knight told her they would "take care of that at the lab." *Id.* at 14, 34-35.  At the end of the interview, Branyan believed she had a job offer that was contingent on the results of a drug test. *Id.* at 35-36.

Branyan provided a urine sample to BayCare Urgent Care, a facility that collects samples to send to an outside laboratory. *Id.* at 39-40.  She tried to give them her list of prescriptions as well, but they told her someone from the lab would contact her for them instead. *Id.* at 39-42.  When Branyan did not receive a call, she tried calling BayCare and the lab herself but was told she needed to give the information to the Princess Martha. *Id.* at 41-42.

On August 24, Branyan called Knight, who immediately transferred her to the Princess Martha's human resources manager, Andrea Von Blomberg. *Id.* at 42-43. Branyan left a voicemail for Von Blomberg in which she disclosed that she was "on two medications which would make me look like I would fail a drug test[,]" and

explained that BayCare and the lab had told her to contact the Princess Martha to verify her prescriptions. *See* Doc. 62-1 at 98-99 (transcript of audio file admitted as Plaintiff's Exhibit 15).  She requested a call back. *Id.*

Branyan denied that Von Blomberg or anyone from the Princess Martha ever returned her call. Doc. 213 at 53, 62, 64-65.  However, her phone records show that the Princess Martha's phone number called her on August 25, and that she checked her voicemail soon afterward. *Id.* at 61-63.  Branyan testified that she was unaware of receiving any such phone call or voicemail. *Id.* at 62, 64-65.

### 2.  Other Trial Testimony

In her testimony, Brittany Knight denied that Branyan disclosed her PTSD diagnosis, tried to hand Knight a list of prescriptions, or requested an accommodation during the job interview. Doc. 214 at 193-95, 217.  If that had occurred, Knight would have forwarded the information to Andrea Von Blomberg to handle. *Id.* at 214-17. Von Blomberg testified that she did not remember whether Knight told her anything about Branyan, PTSD, or medication after Branyan's interview. Doc. 213 at 125-26. Knight and Von Blomberg agreed that Branyan would have been hired if her drug test had come back negative. *Id.* at 129; Doc. 214 at 195.

Von Blomberg had access to a website that displayed applicants' drug test status and results. *Id.* at 111-12.  The website listed a status of "sent to lab" for Branyan's sample. *Id.* at 130.  The Princess Martha's BayCare account manager testified that a urine sample will be sent to the outside lab if the sample's initial screening at BayCare

reads as "non-negative." Doc. 214 at 127. A final result was never received for Branyan's sample because the sample was lost in transit. *Id.* at 137-38.

Von Blomberg did not recall the voicemail that Branyan left on August 24 and could not say whether she had listened to it, but she normally listened to her messages. *Id.* at 131-33. She did not remember whether she called Branyan back. *Id.* at 133. If she did, Von Blomberg guessed that she would have done so in order to "give [Branyan] instructions as to what I could see on the portal," "or to let her know if we had moved on." *Id.* at 137, 143. Because the status of Branyan's drug test on the website indicated "sent to lab," Von Blomberg "would have just indicated that [Branyan] needed to reach back out to the lab." *Id.* at 143, 145. She believed that it was up to an applicant to communicate with the lab, including to verify the applicant's prescription medications. *Id.* at 114, 144.

In January 2022, another job applicant, Tracy Brooks, emailed Knight to notify her that Brooks had a prescription for a substance that would cause her to fail a drug test. Doc. 213 at 210-11. Knight forwarded Brooks' email to Von Blomberg, although she did not believe Brooks was requesting an accommodation under the ADA. *Id.* at 212. Von Blomberg contacted BayCare and the lab to follow up about the results of Brooks' test and verify them with Brooks' prescribed medication. Doc. 213 at 170-75.

Knight testified that she received no training on the ADA from the Princess Martha, and she did not know whether PTSD was a disability. Doc. 214 at 214-17. Von Blomberg had also received no training on the ADA from Defendants, nor did she provide such training to Defendants' employees. Doc. 213 at 101, 108. Von

Blomberg was assigned human resources duties across other TJM Management facilities in the region in addition to the Princess Martha. Doc. 215 at 150. Her duties included making sure the TJM facilities were in compliance with laws like the ADA. *Id.* Knight and Von Blomberg no longer work at the Princess Martha. Doc. 213 at 94; Doc. 214 at 172.

## II.   MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND A NEW TRIAL (Docs. 207, 210)

### A. <u>Renewed Motion for Judgment as a Matter of Law (Doc. 210)</u>

Defendants raise four arguments in their renewed motion for judgment as a matter of law: (1) the EEOC failed to establish that Branyan's prescriptions fell within the drug-screening panel for the Princess Martha's drug test; (2) Branyan abandoned the interactive process by failing to return the Princess Martha's August 25 phone call; (3) TJM Property Management, Inc., is not a joint employer with the Princess Martha; and (4) the EEOC failed to support its claim for punitive damages. The motion is due to be denied as to all four grounds.

### 1. Legal Standard

Federal Rule of Civil Procedure 50 provides, in pertinent part:

(a) Judgment as a Matter of Law.

   (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

      (A) resolve the issue against the party; and

> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> …
>
> (b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> > (1) allow judgment on the verdict, if the jury returned a verdict;
> >
> > (2) order a new trial; or
> >
> > (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50.

A party moving for judgment as a matter of law must show that the trial evidence is "so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001) (citation omitted). The Court must consider "the evidence and the reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Id.*

## 2. Discussion

### a. *Branyan's Prescriptions*

Defendants first argue that the EEOC failed to establish that Branyan's prescriptions fell within the drug-screening panel. Doc. 210 at 3-4. As they did in their Rule 50 motion at trial, they rely on *Gamel v. F. Energy Techs., Inc.*, No. 21-20479, 2022

WL 1551835, *3 (5th Cir. May 17, 2022), in which the court granted summary
judgment for the defense where the plaintiff presented no evidence that the prescription
drugs he was taking would have caused a false positive drug test.  Defendants argue
that the EEOC's failure to present any such evidence means that the jury lacked a
legally sufficient basis to find for the EEOC. Doc. 210 at 3-4.

As the Court explained in its order denying Defendants' Rule 50 motion at trial,
the out-of-circuit, unpublished authority on which Defendants rely is distinguishable.
Doc. 194 at 3.  Here, unlike in *Gamel*, there was evidence that Branyan received a non-
negative result on her preliminary drug screening, and that BayCare and the Princess
Martha test for the same type of drug that Branyan is prescribed as medication. *See*
Doc. 229 at 3-6 (detailing trial evidence on these points).  Viewing this evidence in the
light most favorable to the EEOC, the jury could reasonably infer that her prescription
medication would cause her to fail the drug test.

### b. *Abandonment of the Interactive Process*

Second, Defendants contend that Branyan abandoned the interactive process
because she never returned a voicemail that the Princess Martha allegedly left for her.
Doc. 210 at 5-9.  Defendants point to Branyan's phone records, which demonstrate
that a call was placed to her phone from the Princess Martha's phone number the day
after she requested a call back from Von Blomberg. *Id.* at 6-8.  Despite Branyan's denial
that she received any such call or voicemail, the logs show that she checked her
voicemail a few minutes later. *Id.*  Defendants argue that Branyan's failure to call the

Princess Martha back in response to the alleged voicemail constitutes an abandonment of the interactive process that is fatal to her failure to accommodate claim. *Id.*

The EEOC responds that Defendants' argument requires viewing the evidence in the light most favorable to Defendants, rather than the EEOC. Doc. 229 at 7-9. Because Von Blomberg testified that she could not remember making a call to Branyan, just as she did not remember many other aspects of her employment at the Princess Martha and Branyan's application, the jury reasonably could have chosen not to credit her speculation that she may have called Branyan to discuss the status of her application and drug test. *Id.* at 8-9. Alternatively, based on the rest of her testimony, the jury could have concluded that Von Blomberg would not have offered Branyan assistance with the drug test in any event. *Id.* at 7-13.

An employer will not be liable under the ADA for a failure to accommodate if the employee is responsible for the breakdown of the interactive process. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). "Liability simply cannot arise under the ADA when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate with the employee and provide accommodations based on the information it possesses; and the employee's actions cause a breakdown in the interactive process." *Id.*

The trial evidence here supports a reasonable finding that Defendants did not engage in an interactive process in which they made reasonable efforts to communicate with and accommodate Branyan. Defendants' speculation about the August 25 call from the Princess Martha to Branyan's phone represents just one interpretation of the

trial evidence rather than the only reasonable view of it.  Von Blomberg testified at trial that she had no recollection of calling Branyan back, but that, if she did call, it would have been "either to let her know [what I could see on eScreen] or to let her know if we had moved on." Doc. 213 at 143.  If Branyan's result on eScreen had a status of "sent to lab," as the evidence indicated it did, Von Blomberg testified that she "would have just indicated that [Branyan] needed to reach back out to the lab." *Id.* Von Blomberg maintained that it would not have been her responsibility to take any action to assist Branyan. *Id.* at 144.  Moreover, although the call to Branyan from the Princess Martha was placed at 12:21 PM, by 2:46 PM on the same day Von Blomberg had scheduled an interview for the same position with another candidate. *See* Doc. 188-23 at 34; Doc. 216 at 15-18; Doc. 187-36.  The jury could reasonably find that those actions are not consistent with someone who was waiting for a call back from Branyan to engage in the interactive process.

Therefore, to the extent the jury determined that someone from the Princess Martha left a voicemail for Branyan, it could also have reasonably found that the voicemail did not constitute engagement in the interactive process.  Defendants have not established that the evidence overwhelmingly demonstrates Branyan's responsibility for a breakdown of the interactive process. *Cf. Jones v. Ga. Dep't of Corrections*, No. 1:07-cv-1228, 2008 WL 779326, *6-7 (N.D. Ga. March 18, 2008) (granting summary judgment for employer where the employer proposed an accommodation that it asked plaintiff to consider, but she resigned instead). Defendants are not entitled to judgment as a matter of law on this ground.

### c. Joint Employer

As their third ground for judgment as a matter of law, Defendants argue that no trial evidence supports the jury's finding that TJM Property Management, Inc., was a joint employer with the Princess Martha with respect to any failure to accommodate. Doc. 210 at 9-11. Specifically, there was no evidence that TJM Property Management was involved with the decision to rescind Branyan's job offer or deny her an accommodation. *Id.*

Plaintiff responds that TJM Property Management "gave rise to the ADA violation," in that it exerted control over the Princess Martha's employee handbook and the policies Von Blomberg was following when she failed to accommodate Branyan. Doc. 229 at 13-16. Plaintiff points out that the individuals responsible for the failure to accommodate—Von Blomberg, Knight, and executive director Brooke Lootens—reported to or were otherwise under the control of TJM Property Management, and TJM Property Management left Von Blomberg in charge of reasonable accommodations at the Princess Martha while failing to train her on ADA compliance. *Id.* Finally, Plaintiff also cites the testimony of TJM Property Management's Director of Operations, Kevin Tapp, that TJM Property Management retained control over the Princess Martha's employment policies. *Id.*

Under a joint employer theory of liability, separate entities may be held liable for the same act of discrimination if they "share or co-determine [the] matters governing the essential terms and conditions of employment." *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1360 (11th Cir. 1994) (quotation omitted). The joint

11

employer theory is meant to "concentrate on the degree of control an entity has over the adverse employment decision on which the [discrimination] suit is based." *Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998); *see also Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999) (the "basic question" that governs whether an entity is a joint employer is "who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim.").

Here, the trial evidence supports a reasonable finding that TJM Property Management exercised control over the aspects of the Princess Martha and its employees that gave rise to their failure to accommodate Branyan.  TJM Property Management assigned Von Blomberg the employment duty of ensuring that all TJM facilities in the region were in compliance with the ADA. Doc. 215 at 150-51; Doc. 187-21.  Von Blomberg explained that she attempted to comply with the ADA by following the ADA policy in the employee handbook—which was approved by TJM Property Management and could not be changed without TJM Property Management's approval. Doc. 213 at 101-02; Doc. 215 at 36-37.  Accordingly, there was evidence from which the jury could reasonably conclude, under the totality of the circumstances, that TJM Property Management controlled the fundamental aspects of the employment relationship that gave rise to Branyan's claim. *See Lyes*, 199 F.3d at 1354.

     *d. Punitive Damages*

Lastly, Defendants argue that Plaintiff failed to present evidence that supports an award of punitive damages. Doc. 210 at 11-13.  A plaintiff may receive punitive damages if he shows that the employer acted with malice or reckless indifference to the affected employee's rights. 42 U.S.C. § 1981a(b)(1).  Defendants contend that no trial evidence demonstrated that Von Blomberg was aware of Branyan's disability, which means that she could not have acted with the requisite malice or reckless indifference to her rights. *Id.*  Likewise, Defendants assert that the evidence demonstrated only negligence on the part of Knight rather than malice. *Id.*

Plaintiff responds that punitive damages were justified by executive director Brooke Lootens' admission that she and Von Blomberg submitted false statements to the EEOC during its investigation, as well as the evidence that Defendants failed to train Von Blomberg on the ADA and reasonable accommodations. Doc. 229 at 18-19. With regard to the false statement, Lootens testified that she had approved Von Blomberg's statement to the EEOC, which contained the claim that, "[o]n August 25, 2021, BayCare notified the employer that no final result could be determined since they never received further documentation/information from the applicant as they had requested directly to her." Doc. 187-16 at 2; Doc. 215 at 191-94.  Lootens agreed not only that the statement was incorrect but also that the information available to the Princess Martha could not have supported it; based on this testimony, Plaintiff argued to the jury that she and Von Blomberg intentionally lied to the EEOC. *Id.*; Doc. 216 at 117, 121.

The evidence was not so overwhelmingly in favor of Defendants that the jury's award of punitive damages was unreasonable.  Based on Lootens' testimony that she and Von Blomberg made false statements to the EEOC when defending against Branyan's claim, as well as Defendants' failure to provide ADA training, the jury may have reasonably found that Defendants were consciously indifferent to applicants' ADA rights. *See*, *e.g.*, *Bivins v. Wrap It Up, Inc.*, No. 07-80159-civ, 2007 WL 3047122, *8 (S.D. Fla. Oct. 18, 2007) (awarding punitive damages where defendants lied to the investigating agency to try to cover up their discrimination, demonstrating their knowledge of the unlawfulness of their actions).

Viewing the evidence in the light most favorable to Plaintiff, Defendants have failed to establish that they are entitled to judgment as a matter of law.  The motion is due to be denied.

### B. <u>Defendants' Motion for New Trial</u> (Doc. 207)

Defendants also move for a new trial under Fed. R. Civ. P. 59.  They raise five claims in support: (1) Branyan's account of the interview is against the clear weight of the evidence; (2) the EEOC disregarded the Court's ruling regarding Branyan's history; (3) the jury's damages award was excessive; (4) an adverse jury instruction was warranted in response to Defendants' renewed motion for sanctions, in regard to the August 25, 2021 voicemail; and (5) Defendants were improperly precluded from questioning Darnell Treadwell about his investigation into Branyan's claims after the EEOC opened the door.

### 1. Legal Standard

Rule 59 allows a party to move for a new trial on all or some of the issues within 28 days after the entry of judgment. Fed. R. Civ. P. 59(a), (b). The Court may alter or amend a judgment if there is newly-discovered evidence or "manifest errors of law or fact," including "when the verdict is against the great weight of the evidence or when the verdict would cause a miscarriage of justice." *Central Baptist Church of Albany, Ga., Inc. v. Church Mut. Ins. Co.*, 146 F.4th 1003, 1012-13 (11th Cir. 2025) (quotation omitted); *Gray v. Koch Foods, Inc.*, 144 F.4th 1298, 1312 (11th Cir. 2025) (citation omitted). However, "such a motion cannot be used 'to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of a judgment.'" *Central Baptist Church*, 146 F.4th at 1013, quoting *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) ("Reconsidering the merits of a judgment, absent a manifest error of law or fact, is not the purpose of Rule 59."). Moreover, Rule 59 does not "grant a license to the trial judge merely to substitute his judgment for that of the jury on questions of fact." *Gray*, 144 F.4th at 1312 (quotation omitted).

### 2. Discussion

#### a. *Branyan's Testimony*

As the first ground of their motion for a new trial, Defendants argue that Branyan's account of her interview with the Princess Martha was against the clear weight of the evidence. Doc. 207 at 5-7. Defendants contend that Branyan's version

of events was inconsistent and she was impeached "voluminously." *Id.* at 5-6. She also failed to include in her EEOC Charge of Discrimination the important allegation that she disclosed her PTSD to Knight during the interview. *Id.* Moreover, Branyan's claim that the Princess Martha did not return her August 24 call was proven false. *Id.* Defendants also point out that Branyan was diagnosed with memory problems, and she had a financial interest in the outcome of the case. *Id.* Defendants contrast these characteristics with Knight, whose account of the interview they argue the great weight of the evidence supports. *Id.* at 6-7. They argue that the jury must have rendered its verdict based on sympathy rather than the evidence. *Id.* at 7.

In response, Plaintiff argues that Defendants are asking the Court to determine credibility, which it cannot do. Doc. 230 at 2-3. They also contend that Branyan's testimony was internally consistent and corroborated by the other evidence, in contrast to Defendants' characterizations. *Id.* at 3-5. In addition, Plaintiff argues that the jury was correct to discredit Knight's account of the interview. *Id.* at 5-6.

The district court may grant a motion for a new trial if it finds that the verdict was contrary to the great weight of the evidence. *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1497-98 (11th Cir. 1987) (citation omitted). However, the district court cannot substitute its own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury. *Id.* Whether the reviewing court "would have reached the same conclusion is irrelevant, as long as there is some support for the jury's decision." *Id.*

Here, there was evidentiary support for the jury's decision to credit Branyan's account of the interview over Knight's. Branyan's recollection of what occurred before and during the interview, including what documents she brought with her and what she stated to Knight, was extremely detailed. Doc. 212 at 196-211; Doc. 213 at 10-35. It was not unreasonable for the jury to determine that Branyan's testimony was consistent with the weight of the evidence, and that her omission of the PTSD disclosure from her initial reporting was not dispositive of her credibility regarding what she told Knight. And, despite Defendants' emphasis on the August 25 phone call from the Princess Martha in Branyan's call log, it would not have been unreasonable for the jury to credit Branyan's testimony that she was unaware of the call and did not intentionally choose not to return it. Defendants' arguments amount to a request that this Court substitute its judgment regarding Branyan's credibility for that of the jury, which the Court cannot do. The jury's decision to credit Branyan's testimony was not against the great weight of the evidence.

> b. *Plaintiff's Opening Statement*

Next, Defendants argue that a new trial is warranted because Plaintiff's opening statement repeatedly referenced Branyan's history of sexual assault, contrary to the Court's instruction that it could not become a feature of the trial. Doc. 207 at 7-10. Plaintiff responds that it abided by the Court's Order and offered the information only briefly for relevant purposes. Doc. 230 at 6-9. Plaintiff also points out that many of the exhibits Defendants proffered included the same information; in addition, the Court screened prospective jurors for potential bias on that topic. *Id.* at 7.

The prior Order stemmed from Defendants' motion *in limine* to prohibit Plaintiff from identifying Branyan as a victim of sexual assault, which Defendants argued was irrelevant and prejudicial. Doc. 139. The Court denied Defendants' motion, finding that Branyan's history of sexual assault was directly relevant to this case because it is the basis of her disability of PTSD. Doc. 157 at 7. The Court cautioned Plaintiff to present the information "only to the limited extent that [it is] relevant[,]" because the topic "should not be dwelled on or become a feature of the trial[.]" *Id.*

Plaintiff did not disregard the Court's Order by making Branyan's history of sexual assault a feature of the trial. When describing Branyan's background and the cause of her PTSD, Plaintiff's opening statement used the term "sexual assault" once, and otherwise referred to it obliquely as an "event" that derailed her life, leading to her military discharge and substance addiction. Doc. 212 at 118. Defendants then moved for a mistrial, arguing that Plaintiff had attempted to inflame the jury's passions in violation of the *in limine* order. *Id.* at 131. However, because Plaintiff's comments were neither unduly prejudicial nor designed to evoke sympathy, the Court denied Defendants' motion. *Id.* at 132. In her testimony, Branyan disclosed her sexual assault just once to explain how it led to her military discharge, substance abuse history, and criminal record. *Id.* at 154, 156-57. And Plaintiff's closing arguments contained one brief reference to a "trauma." Doc. 216 at 102. Neither the opening statement nor the other references to Branyan's history during the trial dwelled on the sexual assault in a manner designed to inflame the jury's passions.

Moreover, contrary to Defendants' arguments, Branyan's history of sexual assault was not rendered irrelevant by the stipulation that she was disabled within the meaning of the ADA.  It was probative for Plaintiff to disclose—briefly—the trauma upon which Branyan's disability of PTSD was based and which lent context to her criminal history.  Its probative value was not outweighed by the danger of unfair prejudice from such a limited disclosure. *See* Fed. R. Evid. 403.

Statements made in oral arguments, including in opening statements, "must be plainly unwarranted and clearly injurious to constitute reversible error" when reviewed on appeal. *Showan v. Pressdee*, 922 F.3d 1211, 1216 (11th Cir. 2019), quoting *Peterson v. Willie*, 81 F.3d 1033, 1036 (11th Cir. 1996).  District courts have applied a similar standard when determining whether to grant a motion for new trial based on a statement made in oral arguments. *See*, *e.g.*, *Cote v. Philip Morris USA, Inc.*, 400 F.Supp.3d 1295, 1305 n.7 (M.D. Fla. 2019), *aff'd on other grounds*, 985 F.3d 840 (11th Cir. 2021); *Rodriguez v. Whitestone Group, Inc.*, No. 12-cv-23974, 2014 WL 11878380, *2 (S.D. Fla. May 2, 2014).  Plaintiff's remarks in its opening statement were neither plainly unwarranted nor clearly injurious.  Accordingly, they are not a basis for a new trial.

### c.   *Excessive Damages*

Defendants' third ground for a new trial is that the jury's damages award is excessive. Doc. 207 at 10-12.  Defendants present this argument within their assertion that the jury's passions were inflamed, arguing that the jury's award of punitive damages and emotional distress damages were unsupported by the evidence. *Id.*

19

Plaintiff responds that Branyan provided detailed testimony to support the emotional damages award, and argues that Defendants have not established the standard for a grossly excessive verdict that would necessitate a new trial. Doc. 230 at 9-15.

The Court has already addressed Defendants' punitive damages argument in the previous section, *see* Section II(A)(2), and it will address Defendants' concurrent Motion for Remittitur in the following section. *See* Section III(A).

With respect to the emotional distress damages, the standard of review for compensatory damages awards for intangible, emotional harm is "deferential to the fact finder because the harm is subjective[.]" *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1344 (11th Cir. 2005) (quotation omitted).  Compensatory damages need not be proven with a high degree of certainty and may be inferred from the circumstances as well as proved by the testimony. *Id.* at 1345 (quotations omitted).  A plaintiff's testimony alone may be enough to support an award of emotional damages as long as it is not conclusory and the plaintiff's emotional distress is sufficiently articulated. *Id.*

Here, the jury's emotional damages award was supported by non-conclusory testimony by Branyan that described the specific symptoms of emotional harm that she experienced as a result of Defendants' failure to accommodate her disability. *See* Doc. 212 at 47-48, 80-84.  Therefore, the emotional damages award does not warrant a new trial.

Likewise, Defendants have not established that a new trial is warranted because the jury's overall damages award was grossly excessive and shocks the conscience.  A

new trial is required where a damages award is "grossly excessive," or "so excessive as to shock the conscience of the court." *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1447 (11th Cir. 1985) (citations omitted).[2]  Defendants' arguments on this point are conclusory and rely on the same assertions about sufficiency that the Court has already rejected. *See* Section II(A)(2), *supra*.  "The purpose of punitive damages is to punish the defendant for [its] willful or malicious conduct and to deter others from similar behavior." *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986).  The jury's decision to use punitive damages to reprimand Defendants for the conduct it concluded Defendants committed is entitled to deference and does not shock the conscience.  In any event, as will be addressed in Section III(A), *infra*, the damages award will be significantly reduced pursuant to a statutory cap.  Accordingly, it is not a basis for a new trial.

> ### d. Spoliation

Next, Defendants seek to revisit the denial of their renewed motion for sanctions. Doc. 207 at 12-20.  The subject is the alleged August 25 voicemail from the Princess Martha to Branyan, discussed in Section II(A)(2)(b), *supra*.  Defendants had moved for Rule 37 sanctions before trial based on what they argued was Branyan's spoliation of the alleged voicemail. Doc. 39.  After an evidentiary hearing, the Magistrate Court determined that the motion was due to be denied because

---

[2] Although Plaintiff argues in its response that the damages award was not unconstitutionally excessive, *see* Doc. 230 at 12-14, Defendants do not argue in their motion that the damages were unconstitutionally excessive or violated due process, nor do they refer to the legal standard that applies to that type of claim.  Therefore, the Court will not address it here.

Defendants failed to establish that a voicemail existed. Doc. 112.  The Magistrate
Court highlighted the T-Mobile representative's testimony that Branyan's phone
records show a call rang on her phone and was forwarded to voicemail, but that "we
don't know whether there was any actual content, like if they actually left a message
or it just hung open-air for that entire time." *Id.* at 5, quoting Doc. 43-6 at 3-4.  Von
Blomberg could not remember calling Branyan or leaving her a voicemail, and
Branyan denied that she received one. Doc. 112 at 6.  The Magistrate Court concluded
that Defendants did not meet their burden of proof that the subject of the spoliation
motion ever existed. *Id.*

Defendants renewed their motion for sanctions after the T-Mobile
representative testified at trial. Doc. 216 at 79.  The T-Mobile representative testified
that a call from the Princess Martha went to Branyan's voicemail at a time when her
phone was on and connected to the service network. Doc. 216 at 17, 30.  The call
lasted 29 seconds, which included any time the call was ringing through, the time to
listen to Branyan's voicemail greeting, and the time of any message that was left. *Id.*
at 25.  The phone records do not reveal whether a spoken message, a blank message,
or any message at all was left. *Id.* at 24, 26-27.  Branyan's phone's caller ID was active
during the call, but the records do not reveal whether the caller ID displayed the
Princess Martha's name or just the phone number. *Id.* at 28.  Branyan checked her
voicemail 15 minutes after the call from the Princess Martha. *Id.* at 21.  The call to
voicemail lasted 28 seconds, including the time to enter her pin. *Id.* at 27-28.

In their renewed motion for sanctions at trial, Defendants requested an adverse inference instruction. *Id.* at 79. They argued that the T-Mobile representative's testimony established that a recording existed, and that the trial evidence did not support the hypothetical scenarios in which a voicemail was not left, such as Branyan's inbox being full. *Id.* at 79-81. Although Plaintiff contended that the evidence still failed to establish that a spoken message was left, Defendants responded that they only had to prove the existence of a recording rather than its contents. *Id.* at 81, 83. Defendants further asserted that bad faith was demonstrated by Branyan's testimony that she did not take any steps to preserve the recording despite receiving a spoliation letter from Treadwell. *Id.* at 83. The Court denied the renewed motion, finding that the trial evidence and testimony did not establish Branyan's bad faith to warrant the severe sanction of an adverse jury instruction. *Id.* at 84-85.

Now, Defendants argue that the Court's failure to give an adverse instruction necessitates a new trial. Doc. 207 at 12-20. They assert that they established the requirements of Fed. R. Civ. P. 37(e)(2), including Branyan's bad faith in failing to preserve the voicemail. *Id.* On this point, Defendants emphasize Branyan's testimony that she received instructions in November 2021 to preserve her voicemail messages, but she failed to back up her cell phone, review her voicemail log, retain the phone, or otherwise make any effort to comply. *Id.* at 16-18. Defendants argue that Branyan's lack of a cogent explanation for her actions demonstrates her bad faith, particularly given the voicemail's importance. *Id.* at 19. The voicemail was a critical piece of evidence because it "undoubtedly would have provided proof resolving" the issue of

whether Branyan disclosed her disability and requested an accommodation, and "would have likely resolved this case in its entirety." *Id.* at 20.

In response, Plaintiff argues that Defendants have not established that a voicemail existed, given the T-Mobile representative's testimony that the phone records could not rule out several scenarios in which a voicemail message was not left. Doc. 230 at 16-17. Plaintiff also disputes that Defendants proved the alleged voicemail was lost at a time when Branyan, an unrepresented litigant, was under a duty to preserve it, or that it was lost because she failed to take reasonable steps to preserve it. *Id.* at 18-19. Lastly, Plaintiff contends that Defendants offered no evidence of bad faith. *Id.* at 19-20.

Sanctions for the spoliation of electronic evidence are governed by Federal Rule of Civil Procedure 37(e), as amended in 2015. The Rule addresses the loss of "electronically stored information that should have been preserved in the anticipation or conduct of litigation," but was not preserved because a party "failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e). The Court may give a permissive or mandatory adverse instruction to the jury as a sanction for such a loss, "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2)(B). The "intent to deprive" standard is the equivalent of bad faith in other spoliation contexts: in other words, that the evidence was destroyed "for the purpose of hiding adverse evidence." *Skanska v. USA Civil Southeast Inc. v. Bagelheads, Inc.*, 75 F.4th 1290 (11th Cir. 2023) (quotation omitted). Negligence, or even gross negligence, are not enough to establish bad faith

24

or an intent to deprive. *Tesoriero*, 965 F.3d at 1184; Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment.

Defendants have not established that Branyan acted with an intent to deprive Defendants of adverse evidence. This case stands in contrast to others in which courts have found bad faith. In *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944-45 (11th Cir. 2005), a products liability case alleging defective airbags during a car accident, the plaintiff's bad faith was evident when he allowed his car to be sold for salvage after he received defendant's letter requesting to inspect it. The court found that no lesser sanction than dismissal would suffice because plaintiff should have known that his car, as the subject of the lawsuit, would need to be preserved and examined as evidence central to his case. *Id.* In *Sanska*, 75 F.4th at 1313, in contrast, the court observed that the plaintiff's failure to make any effort to preserve its cell phones after a request for them could indicate either bad faith or "just" gross negligence, but it found that the district court did not clearly err in inferring bad faith.

Here, the Court does not infer bad faith from the totality of the evidence presented at trial regarding the August 25th call. It remains unclear whether a voicemail ever existed, which is relevant to the Court's determination that Defendants have not proven Branyan intentionally destroyed it. This factor also distinguishes this case from *Flury* and *Sanska*, where the destruction of the evidence was not in dispute. Even if a spoken voicemail was left, however, Defendants have not established that Branyan was aware of it or that she intentionally failed to preserve it. The trial evidence was equivocal. While it could support Defendants' theory about what

occurred, it was also not inconsistent with Branyan's longstanding denial of awareness that the Princess Martha called her back, nor with a finding that she was merely negligent. Having heard the testimony and viewed the demeanor of the witnesses, the Court does not find that Branyan acted in bad faith. Therefore, even assuming Defendants established that a voicemail recording was lost because Branyan failed to take reasonable steps to preserve it, an adverse instruction was not permitted under Rule 37(e)(2).

### e. Treadwell's Investigation

Finally, Defendants contend that Plaintiff opened the door to excluded testimony during its direct examination of EEOC investigator Darnell Treadwell, but that Defendants were precluded from pursuing that line of questioning on cross examination. Doc. 207 at 20-22. Specifically, even though Plaintiff had moved *in limine* to preclude questioning regarding the EEOC's investigation, on rebuttal Plaintiff elicited testimony from Treadwell regarding the relatively small percentage of cases he determines have merit. *Id.* Defendants argue his testimony opened the door to Defendants being able to question Treadwell about his investigation of Branyan's claim, and that they were prejudiced by their inability to do so. *Id.*

Plaintiff responds that the Court's preclusion of Defendants' line of questioning was not clearly erroneous. Doc. 230 at 20-25. Plaintiff first disputes that it opened the door; rather, it called Treadwell on rebuttal because Defendants suggested during Branyan's cross examination that Treadwell coached her to lie. *Id.* at 21. Plaintiff contends that its questions were limited to Treadwell's investigative process and his

motives during an investigation, and did not reach the merits of the investigation with Branyan. *Id.* at 21-22. In addition, Plaintiff argues that evidence about the details of the investigation and its merits would have been irrelevant and confusing to the jury. *Id.* at 23. In any event, Defendants have not established that their substantial rights were affected by the exclusion. *Id.* at 23-25.

The Court's *in limine* order granted-in-part Plaintiff's motion to exclude evidence that challenged the EEOC's investigation or findings, to the extent that evidence offered for the purpose of challenging the exhaustion of administrative remedies or the adequacy of the EEOC investigation would not be admissible. Doc. 157 at 4. At trial, Plaintiff elicited testimony from Treadwell that charges of discrimination are dismissed immediately if Treadwell determines they do not have merit, and that he has only recommended moving forward on "four to six" of the approximately 400 cases he has handled in his career at the EEOC. Doc. 214 at 118, 120. Defendants did not object to the latter testimony. However, they argued later that its implication was that Branyan's charge had merit, which opened the door to the substance of Treadwell's investigation into Branyan's claim. *Id.* at 134, *see id.* at 117. Specifically, Defendants sought to admit an activity log from the investigation in which Treadwell apparently made a note that Branyan did not remember Knight's name. *Id.* at 126-27, 134. Defendants had already attempted, unsuccessfully, to bring the document's contents before the jury by refreshing Treadwell's recollection and impeachment, before moving for its admission. *Id.* at 126-134. The Court disagreed

that the door had been opened and sustained Plaintiff's objection to the document's admission. *Id.*

"[A] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of a party" and is preserved by a timely and specific objection or offer of proof. Fed. R. Evid. 103(a).  The burden of demonstrating that substantial rights were affected rests with the party asserting error. *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1446 (11th Cir. 1984).  The exclusion of evidence is harmless, and therefore does not affect a party's substantial rights, if it "would not have added appreciable weight to the insurer's defense." *Id.*

Defendants have not demonstrated that the Court's enforcement of its *in limine* order affected the outcome of the trial.  Significantly, Defendants failed to make a proffer of any specific evidence or line of questioning they intended to pursue after Plaintiff purportedly opened the door. *See* Fed. R. Evid. 103(a)(2).  The only evidence that was proffered and precluded was the document noting that Branyan did not remember Knight's name.  Even if Defendants were correct that Plaintiff opened the door to cross-examining Treadwell about the substance of his investigation into Branyan's claim, they have not demonstrated that the admission of this document— which was not on their exhibit list, and which contained a claim about Branyan's recollection that they did not attempt to cross-examine Branyan herself about— "would have added appreciable weight to [their] defense." *See Perry*, 734 F.2d at 1446. Accordingly, Defendants have not identified a basis for a new trial.

Defendants' motion for a new trial is due to be denied.

### III.    MOTIONS TO AMEND THE JUDGMENT (Docs. 209, 211)

### A. <u>Defendants' Motion for Remittitur (Doc. 209)</u>

In their motion for remittitur, Defendants move under Fed. R. Civ. P. 59(e) to amend the judgment to reflect the statutory damages cap of $50,000 under 42 U.S.C. § 1981a. Doc. 209.  Defendants also ask the Court to allocate the capped damages consistent with the amounts Plaintiff requested in its closing argument: $25,000 in compensatory damages and $25,000 in punitive damages. *Id.*

Plaintiff does not oppose reducing the damages award in accordance with the statutory cap. Doc. 228.  However, Plaintiff opposes any allocation of the reduced damages, arguing that Defendants have offered no legal basis for doing so, and that an allocation would leave the damages award vulnerable should either the compensatory or punitive damages be vacated pursuant to Defendants' other challenges. *Id.*

Under 42 U.S.C. § 1981a(b)(3)(A), the sum of compensatory and punitive damages awarded for a discrimination claim cannot exceed $50,000.  Thus, the jury's award of $50,000 of compensatory damages for emotional suffering and $350,000 in punitive damages is unlawful because it exceeds the statutory cap.

Section 1981a(b)(3)(A) does not address the allocation of compensatory and punitive damages, and Defendants offer no legal authority to support their proposed allocation.  The jury was not bound by the EEOC's request in its closing argument,

and, in fact, chose not to follow it.  The Court will not substitute its judgment for that of the jury except to the extent required by law.  Accordingly, the Court will reduce the jury's award of compensatory and punitive damages to an unallocated total of $50,000, pursuant to the § 1981a statutory cap.  Defendants' motion for remittitur is due to be granted-in-part and denied-in-part.[3]

### B. Plaintiff's Motion for Injunctive Relief

Plaintiff seeks to amend the judgment to issue injunctive relief. Doc. 211. Under 42 U.S.C. § 2000e-5(g)(1), "if the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate[.]"

Because the EEOC represents the public interest, its claims seek to deter an employer from future discrimination rather than merely protecting the rights of an individual claimant. *U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d

---

[3] Plaintiff points out that the relief Defendants seek is not a remittitur, which is a discretionary remedy arising under Fed. R. Civ. P. 59 in which a court determines that the jury's award is unreasonable and substitutes its judgment for that of the jury regarding the appropriate amount of damages. *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999).  Defendants seek a reduction as a matter of law rather than a discretionary reduction. Some courts have concluded that a motion to reduce a damages award as inconsistent with a statutory cap arises under Rule 50 rather than Rule 59, while others continue to use the "parlance of remittitur" to describe the type of relief. *See, e.g., Capital Inventory, Inc. v. Green*, No. 1:20-cv-3224, 2024 WL 1383228, *2 n.4 (N.D. Ga. Feb. 29, 2024) (collecting cases and discussing the distinction between the two types of relief).  In this case, however, the parties agree that the jury's award exceeds the statutory cap and must be reduced to that amount. Defendants advance no other legal arguments.  Where the parties have demonstrated the need for this non-discretionary reduction, the Court need not determine whether Rule 50 or 59 most appropriately governs it.

1244, 1253 (11th Cir. 1997).  As a result, the Eleventh Circuit has suggested its agreement with the Seventh and Ninth Circuit's position that the EEOC is entitled to injunctive relief whenever it proves discrimination if the employer fails to prove that the violation is not likely to recur. *Id.* at 1253-54, citing *E.E.O.C. v. Harris Chernin, Inc.*, 10 F.3d 1286, 1291-92 (7th Cir. 1993) and *E.E.O.C. v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1544 (9th Cir. 1987).  Several courts in this Circuit have applied this two-part test when determining whether to grant injunctive relief. *See U.S. Equal Emploment Opportunity Comm'n v. Fed. Express Corp.*, 180 F. App'x 865, 867 (11th Cir. 2006) (citing *Massey Yardley* for two-part test for injunctive relief); *Equal Emp. Opportunity Comm'n v. Cigar City Motors, Inc.*, No. 8:18-cv-2055, 2023 WL 2799739, *13 (M.D. Fla. Apr. 5, 2023); *Equal Emp. Opportunity Comm'n v. Exel, Inc.*, No. 1:10-cv-3132, 2014 WL 12538889, *2 (N.D. Ga. Mar. 13, 2014); *E.E.O.C. v. Pacific Int'l Equities, Inc.*, No. 98-1458-civ, 2000 WL 989987, *1 (S.D. Fla. May 26, 2000).  This Court, too, will apply the test approvingly cited in *Massey Yardley* to determine whether injunctive relief is warranted.

Applying the *Massey Yardley* test, the Court finds that Plaintiff has proven discrimination, and Defendants have not proven that the discrimination is unlikely to recur.  With respect to the first prong, the Court adopts the jury's verdict and findings, including the factual findings that underlay its award of punitive damages. *See* 42 U.S.C. § 1981a(b)(1) (punitive damages may be awarded if the employer acted with malice or reckless indifference to the affected employee's rights); Doc. 185 at 19-20 (in

jury instructions, discussing standard for punitive damages). The jury concluded that Defendants' employee acting in a managerial capacity knew that federal law prohibits discrimination and discriminated against Branyan anyway, or acted with serious disregard for whether the conduct violated federal law. *See id.* As discussed in Section II(A)(2)(d), *supra*, this finding is consistent with Lootens' testimony that she and Von Blomberg made false statements to the EEOC during its investigation, as well as Defendants' lack of anti-discrimination training for its employees engaged in hiring. The evidence and the jury's conclusions are contrary to Defendants' claim that Knight "earnestly believed Branyan failed to disclose her disability to her." Doc. 222 at 3. Plaintiff has established the first prong of the *Massey Yardley* test.

Second, Defendants have failed to establish that violations are unlikely to recur. In response to Plaintiff's motion, Defendants argue that Von Blomberg and Knight are no longer employed there, that Branyan's case was an isolated incident, and that Defendants demonstrated their ability to comply with the ADA when they assisted Tracy Brooks soon after Branyan's application. Doc. 222 at 4-5, citing *Fed. Express Corp.*, 180 F. App'x at 867 (district court did not abuse its discretion in denying injunctive relief where the retaliation "was an isolated incident by a single manager who is no longer employed by FedEx.").

However, these arguments ignore Knight's and Von Blomberg's testimony that neither of them received training from Defendants regarding the ADA or reasonable accommodations, and neither of them knew how to identify or handle a request for accommodation. *See* Doc. 211 at 5-6, citing Doc. 214 at 212-17 and Doc. 213 at 101-

04; *cf.* Doc. 215 at 221-22 (Lootens' testimony that employees are trained on the ADA upon hiring). This is particularly noteworthy because Knight had hiring responsibilities, and Von Blomberg was Defendants' regional human resources specialist whom Lootens testified was responsible for ensuring that employees understood the ADA training Lootens claimed was provided. The fact that Defendants no longer employ them does not address the underlying deficiency in Defendants' policies and training. And Knight's and Von Blomberg's compliance with the ADA in Tracy Brooks' case—shortly after Defendants were made aware of Branyan's EEOC charge—carries little weight in the absence of evidence that Defendants responded to Branyan's claim by implementing comprehensive ADA training and revamped policies. Instead, Defendants made false statements during the EEOC investigation and have apparently made no changes to their policies or training. *See, e.g., Pacific Int'l Equities*, 2000 WL 989987 at *1 (injunctive relief was warranted where defendants did not have a formal complaint procedure or policy regarding sexual harassment and there was no testimony at trial that defendants had implemented one in the intervening years). Defendants have not met their burden of proving the violation is unlikely to recur.

Accordingly, some injunctive relief is warranted. Nonetheless, the scope of the relief Plaintiff requests is overbroad and is not narrowly tailored to the single violation in this case. Plaintiff requests the following, for a duration of five years: a three-hour annual training for hiring managers, revised ADA policies and procedures, revised application and hiring processes, notification to any successors and assigns, the posting

of a notice to employees, and monitoring by the EEOC.  Plaintiff has not demonstrated that the scope of their requested injunction is proportionate to the circumstances of this case. *See Cigar City Motors*, 2023 WL 2799739, at *13; *Exel*, 2014 WL 12538889 at *2; *Pacific Int'l Equities*; 2000 WL 989987 at *1 (all finding same and granting only limited injunctive relief).  Therefore, the motion for injunctive relief is due to be granted-in-part and denied-in-part.  It will be granted to the extent that Defendants will be required to implement an annual one-hour training for a period of three years, to adopt and maintain a detailed ADA anti-discrimination policy that addresses hiring procedures, and to notify Plaintiff when they have complied with these requirements. An Amended Judgment that describes the injunctive relief will be entered by separate Order.

Accordingly, it is **ORDERED:**

1. Defendants' Renewed Motion for Judgment as a Matter of Law (Doc. 210) is **DENIED**.

2. Defendants' Motion for a New Trial (Doc. 207) is **DENIED**.

3. Defendants' Motion for Remittitur (Doc. 209) **GRANTED-IN-PART and DENIED-IN-PART**, to the extent that the Court will amend the Judgment to reduce the jury's award of compensatory and punitive damages to an unallocated total of $50,000.

4. Plaintiff's Motion for Injunctive Relief (Doc. 211) is **GRANTED-IN-PART and DENIED-IN-PART**, to the extent that the Court will amend

the Judgment to include the limited injunctive relief described in this

Order.

5. An Amended Judgment will be entered by separate Order.

**DONE** and **ORDERED** in Tampa, Florida on January 12, 2026.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties